### DAVID CUFFEE *vs.* JOHN MILK.

A devise of land to the testator's 'son W. and his oldest male heir forever" gives an estate tail to W.

W., a tenant in tail, mortgaged his real estate by a deed in the usual form of a mortgage of an estate in fee simple, executed in the presence of two subscribing witnesses, acknowledged and recorded: His right of redeeming the estate was seized and sold on an execution against him, and a deed thereof, executed in the presence of only one subscribing witness, was given by the officer to M. and H., the purchasers: W. afterwards gave to M. a quitclaim deed of the mortgaged estate, executed in the presence of two subscribing witnesses, acknowledged and recorded; and M. paid the debt for which W. mortgaged the estate. *Held,* that the estate tail was barred, and an inheritance in fee simple vested in M., under the provisions of *St.* 1791, *c.* 60.

WRIT OF ENTRY to recover a tract of land in Westport, known as the Allen lot. Trial, on the issue of *nul disseizin*, before *Shaw*, C. J. whose report was as follows:

The demandant claimed title under Paul Cuffee, his grandfather, who died seized of the estate, and who made a will, which, after his decease in 1817, was duly proved and allowed. The will contained the following clause: "Also I give to my son, William Cuffee, and to his oldest male heir forever, the lot of land which I bought of Ebenezer Eddy, called the Allen lot." The testator also bequeathed to said William some personal property, and $300 to enable him to build a house on the land devised.

It was proved or admitted, that William Cuffee was the eldest son of Paul Cuffee; that he entered on the demanded premises, under the devise; that he died about the year 1838; that the demandant was his eldest son, and was, at the time of the trial, between eighteen and nineteen years of age. The tenant, conceding that William Cuffee took the estate under

Cuffee *v.* Milk.

the devise, contended that the devise gave an estate tail; that, as tenant in tail, he had a right to bar the entail; and that he did bar it, conformably to *St.* 1791, *c.* 60, by several conveyances, through which the tenant had a right to hold the estate in fee. To establish this defence, the tenant offered the following evidence: 1st. A mortgage of the demanded premises made by said William Cuffee to Isaac Little, in the usual form of a mortgage of a fee simple estate, dated February 23d, 1822, acknowledged on the same day before a justice of the peace, and recorded March 11th 1822, attested by two witnesses, purporting to be made on the consideration of $400, and conditioned for the payment of $400, and interest, in two years. 2d. A judgment of the supreme judicial court, at April term 1823, in favor of Peleg Slocum against Paul Cuffee, William Cuffee and William Mingo, for $132·50 debt, and $57·70 costs; a writ of execution issued on said judgment; a seizure and sale, on said writ, of William Cuffee's equity of redemption in said premises; a deed thereof, dated July 3d 1823, by Samuel Barker, deputy sheriff, to John Milk (the tenant) and Bradford Howland, as the highest bidders and purchasers. This deed was executed in the presence of only one witness, and was not recorded till after this action was instituted. The equity of redemption was not attached on the original writ in the action in which said judgment was recovered. 3d. A deed from William Cuffee to said John Milk, dated July 4th 1823, for the consideration of $57.59, executed in presence of two witnesses, acknowledged on the same day, and recorded on the next day, purporting to be a quitclaim and release of all said William's right, title and interest in the premises. 4th. A judgment of the supreme judicial court of April term 1827, continued by adjournment to August, in favor of Isaac Little against John Milk, for possession of the described premises, with costs taxed at $36·48. 5th. Payment on the 24th of September 1827, of $462 and balance, $57·77, in full satisfaction and discharge of the aforesaid mortgage, and for the redemption thereof.

The demandant contended that the devise was of a life

estate to William, with remainder to his oldest male heir ; and also, that if it was a devise of an estate tail, yet the remainder in tail to the demandant was not barred by either or all of the conveyances stated.

A verdict was taken by consent, for the demandant, subject to the opinion of the whole court upon these · questions. Judgment to be entered on the verdict, if the devise constituted an estate tail, and the entail is not barred ; otherwise, the verdict to be altered and amended, so as to stand as a verdict for the tenant.

*Coffin*, for the tenant. The case shows that William Cuffee had no issue when the will was made, and he therefore took an estate tail in the demanded premises, and could take in no other way. Gilb. Dev. (3d ed.) 33. *Wild's case*, 6 Co. 17. *Parr* v. *Swindels*, 4 Russell, 283. *Nightingale* v. *Burrell*, 15 Pick. 114. *Parkman* v. *Bowdoin*, 1 Sumner, 364. The estate tail was barred by the deeds under *St.* 1791, c. 60. *Wheelwright* v. *Wheelwright*, 2 Mass. 447. *Williams* v. *Hichborn*, 4 Mass. 189.

*Eliot*, for the demandant. Admitting that William Cuffee's estate in the demanded premises was an estate tail, it has not been barred. His first deed was a mortgage, and he retained the estate, as to all persons besides the mortgagee, and might have conveyed it to a third person, so as to have barred the entail. *Bolton* v. *Ballard*, 13 Mass. 227. The judgment, and the proceedings under it, did not bar the entail. After the equity was seized on execution, the entail might have been barred by a proper deed of conveyance. *Bigelow* v. *Willson*, 1 Pick. 485. The land itself might have been taken on the execution. *White* v. *Bond*, 16 Mass. 400.

The officer's deed of the equity was not so executed as to bar the entail, there being only one witness to it. By *St.* 1798, c. 77, § 5, which was in force when this deed was made, such deed was as " effectual to convey the debtor's right in equity as if the same had been made and executed by such debtor." The mere right in equity might have been conveyed by the debtor, by a deed attested by a single witness ;

but by *St.* 1791, *c.* 60, § 1, a tenant in tail, in order to bar the entail by deed, must do it by conveying " in fee simple, by deed duly executed before two or more credible subscribing witnesses, for a good and valuable consideration, *bonâ fide.*"

The quitclaim by William Cuffee to the tenant was not a conveyance " in fee simple." It only authorized the tenant to redeem the mortgage. Besides ; the consideration of $57 was manifestly insufficient for a *bonâ fide* conveyance of the fee. *Soule* v. *Soule*, 5 Mass. 64, 65.

*Coffin*, in reply. The mortgage conveyed a fee simple, and the subsequent proceedings divested the mortgagor (tenant in tail) of all his estate. An officer's deed of an equity of redemption need not have two subscribing witnesses. If executed in such a manner as would render the mortgagor's deed thereof valid, it will make a valid transfer to the purchaser. But two witnesses are not necessary to any deed in this Commonwealth, except that of a tenant in tail, when he seeks to bar the entail by a conveyance in fee simple ; and this is required by special provision of *St.* 1791, *c.* 60. By § 2 of that statute, lands held in fee tail are made subject to the payment of the debts of the tenant in tail, like other real estates. Of course, they are subject to the same proceedings only as other real estates.

In *Soule* v. *Soule*, cited for the demandant, there was *no consideration*, either good or valuable, for the deed by which it was attempted to bar the entail. See 15 Pick. 120, 121.

WILDE, J. The demandant claims under the will of his grandfather, Paul Cuffee, who died seized of the demanded premises. The words of the devise are, " also, I give to my son William Cuffee, and to his oldest male heir forever, the lot of land which I bought of Ebenezer Eddy, called the Allen lot." Some personal property also was bequeathed to the said William, together with $300 to enable him to build a house on the lot devised.

It was contended on the part of the demandant, at the trial, that he, being the eldest son of the said William, took a remainder under the will ; but this construction of the will

has not been maintained at the argument, and it is very clear that the estate devised to William was an estate tail.

The only question therefore is, whether the entail was barred by the deeds and the proceedings reported; and we are of opinion that it was so barred. It is true that the estate tail was not barred by the mortgage deed, as the whole estate was not thereby conveyed, within the meaning of *St.* 1791, *c.* 60, § 1. But the mortgagor's equity of redemption was afterwards legally seized and sold on execution to the tenant and Bradford Howland, and by this seizure and sale William Cuffee was divested of his whole remaining estate and interest in the mortgaged premises; and under the second section of the statute the bar was complete.

It was objected that the deputy sheriff's deed was not effectual to complete the bar, because it was not executed before two witnesses, as required by the first section of the statute. But this deed conveyed the mortgagor's right and title, by virtue of the second section, which declares all estates in fee tail to be subject to the payment of the debts of the tenant in tail, in the same way and manner as other real estates are liable and subject; and it cannot be questioned that the deputy sheriff's sale would have been valid, if the mortgagor had held the estate in fee simple. If, however, there had been any defect in the seizure and sale of the equity, the same would have passed by the deed of release of the said William Cuffee to the tenant, which was executed in the presence of two witnesses, and was made *bonâ fide* and for a valuable consideration, as the statute requires. But, in the opinion of the court, the deputy sheriff's sale was effectual to convey the mortgagor's equity of redemption, and no confirmation of the tenant's title was necessary.

The verdict is to be altered and amended, so as to stand as a verdict for the tenant, and judgment thereon is to be rendered accordingly.